Rel: May 15, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2025-2026

————————————————

### SC-2025-0804

————————————————

**Daniel Griffin Thomas**

**v.**

**Christopher Bruce Thomas, individually and as personal representative of the Estate of Ernest Bruce Thomas, deceased**

**Appeal from Hale Circuit Court**
**(CV-24-900030)**

MENDHEIM, Justice.

Daniel Griffin Thomas appeals from an order entered by the Hale

Circuit Court declaring that he was not the biological child of Ernest

Bruce Thomas, deceased, for purposes of inheriting from Ernest's estate. Because the appeal is from a void order, we reverse and remand.

Ernest was married to Patti C. Thomas from 1980 to 1990. Christopher Bruce Thomas and Daniel were born to Patti during the marriage, the latter being born in September 1985. In early 1990, the circuit court entered a divorce judgment regarding the marriage of Ernest and Patti ("the divorce judgment"), but it is unclear from the record before us what the custody terms were in the divorce judgment. The divorce judgment was modified in 1999 to award primary physical custody of Christopher to Ernest and primary physical custody of Daniel to Patti. Ernest died intestate in February 2024.

In March 2024, Christopher filed in the Hale Probate Court a petition for letters of administration regarding Ernest's estate. In the petition for letters of administration, Christopher alleged that Daniel was not the biological child of Ernest, that Christopher was the only heir of Ernest, and that Daniel was not entitled to inherit any part of Ernest's estate. On April 4, 2024, the probate court granted Christopher letters of administration regarding Ernest's estate.

2

On May 14, 2024, Christopher, as an heir and as the personal representative of Ernest's estate, filed in the circuit court a petition for the removal of the administration of Ernest's estate from the probate court to the circuit court. The May 2024 removal petition, which was signed by Christopher's counsel, alleged that Christopher was an heir of Ernest and the personal representative of Ernest's estate, that "there ha[d] been no final settlement of said ... estate," and that the estate could be better administered in the circuit court. Christopher concedes that the May 2024 petition was not verified as required by Ala. Code 1975, § 12-11-41, which states:

> "The administration of any estate may be removed from the probate court to the circuit court at any time before a final settlement thereof, by any heir ... [or] administrator ... of any such estate, without assigning any special equity; and an order of removal must be made by the court, upon the filing of a sworn petition by any such heir ... [or] administrator ... of any such estate, reciting that the petitioner is such heir ... [or] administrator ... and that, in the opinion of the petitioner, such estate can be better administered in the circuit court than in the probate court."

Also on May 14, 2024, the circuit court entered an order removing the administration of Ernest's estate from the probate court to the circuit court (the estate-administration proceeding in the circuit court is

3

referred to as "the circuit-court proceeding"). The order required the probate court to deliver its file to the clerk of the circuit court.[1]

On May 31, 2024, Christopher, as the personal representative of Ernest's estate, requested, in the circuit-court proceeding, a declaratory judgment pursuant to Ala. Code 1975, § 6-6-225.[2] In part, Christopher alleged that Ernest was the presumed father of Daniel; that, after the entry of the divorce judgment, "it came to light" that Ernest was not Daniel's biological father; and that that disclosure had resulted in the custody-modification proceeding. Christopher requested that the circuit

---

[1]The record on appeal does not include the record from the probate court.

[2]Section 6-6-225 states:

"Any person interested as … an … administrator … or heir … in … the estate of a decedent … may have a declaration of rights or legal relations in respect thereto:

"(1) To ascertain any class of … heirs, next of kin, or other; [or]

"….

"(3) To determine any question arising in the administration of the estate …, including questions of construction of wills and other writings."

court enter an order declaring that Daniel was not an heir of Ernest and was not entitled to inherit any part of Ernest's estate.

In August 2024, Daniel filed a response alleging that the circuit court had "adjudicated" Ernest to be his father in the divorce judgment and referencing the circuit-court case number for the divorce case.[3] Also, Daniel alleged that "Ala. Code [1975,] § 26-17-631[,] allows for the paternity of a child who has an adjudicated father to be disproved only by admissible results of genetic testing excluding that man as the father or identifying another man as the father."[4] (Emphasis in original.) Daniel requested that he be declared an heir of Ernest.

Christopher filed a motion requesting that the circuit court order him and Daniel to submit to DNA testing. Christopher subsequently amended that motion. In support of the amended motion, he filed an affidavit from Patti in which she averred that Christopher was Ernest's

_____

[3]Daniel's response mistakenly used Christopher's name, instead of Ernest's name, when discussing the divorce case. Also, no part of the record from the divorce case is included in the record on appeal.

[4]Section 26-17-631 is part of the Alabama Uniform Parentage Act, Ala. Code 1975, § 26-17-101 et seq., and discusses the requirements for the use of genetic testing to adjudicate paternity.

biological child but that Daniel was not Ernest's biological child. She further averred that Ernest was not aware that he was not Daniel's biological father when the divorce judgment was entered and that:

> "5. In or about the year 1999, I advised Ernest … that he was not the biological father of Daniel …. As a result thereof, we filed a Joint Petition to Modify the [d]ivorce [judgment] to provide that from that date forward I would have the full custody of Daniel …, and Ernest would have full custody of Christopher. …
>
> "6. On or about May 17, 1999, an Order was entered by [the circuit court] modifying [the divorce judgment] to provide for the terms set out hereinabove in Paragraph Five (5).
>
> "7. Although it is not explicitly stated in the Joint Petition to Modify or the Order granting the same, it was my intent and I believe it was the intent of Ernest … to file said modification proceeding to acknowledge and have the Court order and decree that Ernest … was not the biological father of Daniel. …
>
> "8. In the years since said Modification Order was entered, Ernest … did not hold himself out as the father of Daniel …, and Daniel … did not hold himself out as the son of Ernest. …"

On November 20, 2024, the circuit court entered an order granting Christopher's amended motion to require DNA testing. The following day, Daniel filed a motion to set aside the November 2024 order, which the circuit court set for a hearing to be held on December 19, 2024. Before the hearing, Christopher submitted a copy of a November 2019 Alabama

6

Marriage Certificate executed by Daniel in which he stated, under oath, that his father was Thomas Alvin Christian.

On January 19, 2025, the circuit court entered an order requiring Christopher and Daniel to submit to Avuncular DNA testing on February 6, 2025, at the Hale County Child-Support-Enforcement Office. (Avuncular DNA testing is used to test for a biological relationship through an unavailable parent's sibling.) The January 2025 order stated that, because Ernest was deceased, Christopher must ensure that Ernest's sibling, Gretta Thomas Otts, also submit to DNA testing. The results of the DNA tests were to be filed with the circuit court.

After the DNA tests were completed, Christopher filed a motion to set the case for a hearing "to review said DNA test results in open court." On May 28, 2025, the circuit court entered an order stating that the circuit-court proceeding had been scheduled for a pretrial hearing to be held on June 3, 2025, and that the parties could appear at that hearing virtually or by telephone if they so desired. Daniel did not appear for the June 2025 hearing, but his counsel was present and stated during the hearing that he could arrange for Daniel to be present by video. However, that did not occur.

7

During the June 2025 hearing, Christopher argued that Daniel was not Ernest's child or heir based on DNA test results indicating that Ernest could not be Daniel's biological father, Patti's affidavit, and Daniel's marriage certificate. Daniel's counsel did not object to consideration of the merits of Christopher's claim that Daniel was not Ernest's child but, instead, argued that

> "what established [Daniel] as the child of Ernest ... was an adjudication in a divorce from 199[0]. And at that time, they had a five-year statute of limitations, if you believe the child wasn't yours, you had to go in front of the Court and petition to have someone else be -- to establish paternity of someone else to that child. He didn't -- [Ernest] didn't do that. In 1999, the adjudication of paternity was reaffirmed by Your Honor in the modification.
>
> "Since that point in time and since 1990 ... Ernest ... has never petitioned the Court to undeclare paternity. He could have written a will and written this son that maybe he believed was not biologically his out of the will and didn't do that. Through the laws of intestate statute, once you have an adjudication, that is your child, that's it, he is an heir at law.
>
> "[Daniel] does not have to hold out [Ernest] to be his father in the affidavit when he got married, his marriage certificate. It's not a requirement of the son to hold that father out to inherit from him or for him to be his son.
>
> "As far as the DNA test goes, they do not have the DNA from [Ernest]. The DNA test initially came out and said that [Daniel] and Christopher were unrelated, and they had to update the information that they had the same mother and then they got a different test that came out that is tested

8

against the paternal aunt, not against their father. If the paternal aunt and their father had a different father, I imagine the results would be different, but I don't -- I believe that -- and we're not -- but I believe that we could stipulate to the admissibility of that DNA test, and I believe we could stipulate -- I believe we could stipulate that he's not biologically the son of [Ernest] and they have not met their burden -- whatever that burden may be -- of overturning the adjudication from 1990 and a subsequent adjudication from 1999 that he is the child of Ernest."

Daniel's counsel further stated, as to the marriage certificate, that Daniel

"can hold anybody out to be his father, and it has already been adjudicated that his legal father is Ernest.

"....

"It's my position legally that it's irrelevant to the legal adjudication of him as a child. He could say Superman was his dad. It wouldn't matter. But legally his father is Ernest …[,] and it has been adjudicated."

After Christopher's counsel repeated his argument, the circuit court instructed him to prepare an order.

On July 7, 2025, the circuit court entered an order that stated the circuit-court proceeding was before the court on Christopher's request for a declaratory judgment and his paternity-test motion, as amended. The July 2025 order included findings that the DNA test results "establish[ed] by scientific evidence that Daniel … is not the biological son of Ernest" and that, based on Patti's affidavit regarding the 1999

9

custody-modification proceeding, it was Patti's and Ernest's understanding that that proceeding "was intended to acknowledge and have the Court order and decree that Ernest ... was not the biological father of Daniel." The July 2025 order also stated that the circuit court took "judicial notice" that Daniel had stated under oath, in the November 2019 marriage certificate, that his father was Thomas Alvin Christian, "evidencing [Daniel's] own acknowledgment that he is not the biological child of [Ernest]." The July 2025 order concluded by declaring that Daniel was not Ernest's biological child or heir and that he was not entitled to any part of Ernest's estate.

On August 5, 2025, Daniel filed a postjudgment motion, which was set for a hearing to be held on September 29, 2025. In the postjudgment motion, Daniel referenced § 12-11-41 and argued that the circuit court lacked subject-matter jurisdiction because no sworn petition to remove the administration of Ernest's estate had been filed for the purpose of removing the estate administration from the probate court to the circuit court and because the petition had not been filed by "a party with standing." Also, as to the merits of the July 2025 order, Daniel again argued that Ernest had been adjudicated to be Daniel's father in the

divorce judgment and that that determination had not been changed by the 1999 custody-modification judgment. Further, Daniel made additional arguments that he had not previously presented to the circuit court, including that

> "[t]he determination of paternity -- or as was done in the instant case -- a determination of non-paternity after death -- must adhere to strict procedural requirements and ensure the protection of substantive and procedural due process rights. [Daniel] was not afforded adequate protection of his due process rights. To the extent that this Court relied on a purported affidavit executed by [Patti] ... regarding the circumstances of a post-divorce modification, [Daniel] was not a party to that divorce or post-divorce proceeding, was not represented in those matters, and was not appointed a Guardian ad Litem in the post-divorce modification proceeding on which [Patti] purports to know the intent of [Ernest] despite this being contradicted by the Orders issued and by the Agreement of [Ernest and Patti]. Hence, the Court is purporting to rely on circumstances surrounding a proceeding for an outcome which did not occur (there was an adjudication of paternity, not an adjudication of non-paternity) and in which [Daniel], a then-minor child, was not represented."

At approximately the time that the September 2025 hearing on Daniel's postjudgment motion was scheduled to commence, Christopher, as an heir and as the personal representative of Ernest's estate, filed in the circuit-court proceeding an amended petition to remove the administration of Ernest's estate from the probate court to the circuit

11

court. The amended petition was executed by Christopher, under oath. In October 2025, the circuit court entered an order granting the amended petition.

Daniel filed a notice of appeal to this Court, which was held in abeyance pursuant to Rule 4(a)(3), Ala. R. App. P. On November 3, 2025, Daniel's postjudgment motion, which had requested that the circuit court resolve an alleged defect as to its subject-matter jurisdiction, was denied by operation of law, and Daniel's appeal quickened.

We pretermit any discussion of the merits of Daniel's appeal because we agree with his argument that a jurisdictional impediment precludes our review of those matters. The probate court is the court of "original and general jurisdiction over" estate administration. Ala. Code 1975, § 12-13-1(b). The circuit court may assume jurisdiction over a pending estate administration only if its jurisdiction is properly invoked so as to oust the probate court's jurisdiction, and the legislature has expressly provided that such removal requires a sworn petition by a proper party in accord with § 12-11-41, not mere allegations by a party's attorney. See Hoff v. Estate of Kidd, 382 So. 3d 569, 572 (Ala. 2022) (discussing the verification requirement of § 12-11-41 in jurisdictional

12

terms); Ex parte Terry, 957 So. 2d 455, 458 (Ala. 2006) ("'We would say a petition using the statutory words would be sufficient, if the facts support them in their legal sense. Being an ex parte proceeding, it is the existence of these facts presented in statutory way that gives the court jurisdiction.' [Ex parte McLendon,] 212 Ala. [403,] 405, 102 So. [696,] 698 [(1924)]."); Ex parte McLendon, 212 Ala. 403, 405, 102 So. 696, 698 (1924); Dooley v. Dooley, 205 Ala. 281, 282, 87 So. 545, 546 (1921) ("[T]he bill (or petition) was not sworn to nor does it contain an averment the equivalent of the requirement of the [removal] statute that testator's estate can be better administered in the circuit court in equity, and for this reason the decree cannot be referred to that statute."); cf. Ex parte Green, 221 Ala. 298, 300, 129 So. 72, 73 (1930) (stating that a verified pleading is "treated as evidence, because [it is an] affidavit[]").

It is undisputed that the circuit court has subject-matter jurisdiction to remove an estate administration under § 12-11-41. However, because Christopher failed to file a sworn petition that invoked the circuit court's jurisdiction to remove the administration of Ernest's estate before September 2025, the May 2024 removal order was ineffective, and the July 2025 order is void. Cf. Redtop Mkt., Inc., ex rel.

13

Bolton v. State ex rel. Green, 66 So. 3d 204, 206 (Ala. 2010) (noting the general rule that orders entered by a trial court that lacks subject-matter jurisdiction are void). The circuit court did not err by allowing Christopher to correct the defects in the May 2024 petition as of September 2025, but that did not ratify intervening orders that had been entered before the circuit court had validly removed the administration of Ernest's estate. And the entry of the October 2025 order removing the administration of Ernest's estate was not the entry of an order that would authorize an appeal to this Court pursuant to Ala. Code 1975, § 12-22-21(4), which addresses appeals from an order regarding the distribution of an estate.[5] See Wheeler v. Marvin, 350 So. 3d 302, 303 (Ala. 2021)(plurality opinion); Awbrey v. Estes, 216 Ala. 66, 67-68, 112 So. 529, 530-31 (1927). No appealable order has been entered either granting or denying Daniel's entitlement to a distribution from Ernest's estate. Accordingly, the July 2025 order is reversed, and this cause is remanded

---

[5]This case does not involve a type of case as to which the circuit court has no subject-matter jurisdiction, as to which an amendment to a pleading would be ineffective. Nevertheless, for the purpose of removing the administration of Ernest's estate, the circuit court could not assume jurisdiction from the probate court over the estate administration until Christopher filed a petition satisfying the jurisdictional requirements of § 12-11-41.

14

with instructions for the circuit court to enter an order vacating the July 2025 order.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Stewart, C.J., and Shaw, Bryan, and McCool, JJ., concur.